IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


KURT L. MOFFITT                                                          PLAINTIFF


        v.                        Civil No. 09-3032


MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                           DEFENDANT

## MEMORANDUM OPINION

### I.      Factual and Procedural Background

        Kurt L. Moffitt ("Plaintiff") appeals from the decision of the Commissioner of the Social

Security Administration ("Commissioner") denying his applications for disability insurance benefits

("DIB") and supplemental security income benefits ("SSI"), pursuant to §§ 216(i) and 223 of Title

II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d), and § 1602 of Title XVI, 42 U.S.C.

§ 1381a, respectively (collectively, "the Act").

        Plaintiff filed his DIB and SSI applications on September 18, 2003, alleging a disability onset

date of January 18, 2002, due to chronic back pain, sciatica and gout. (Tr. 21-24, 50-56, 61-63). At

the administrative hearing, Plaintiff alleged additional impairments, including organic brain

dysfunction, cognitive dysfunction, depression, adjustment disorder, and fatigue. (Tr. 416-65). At

the time of the alleged onset date, he was thirty six years old and possessed a GED and a trade school

certificate. (Tr. 59, 342). He performed past relevant work as an automotive and diesel mechanic.

(Tr. 342).

        Plaintiff's applications were denied at the initial and reconsideration levels. (Tr. 21-36). At

his request, an administrative hearing was held on August 15, 2005. (Tr. 217-65). Plaintiff was

present at the hearing and represented by his attorney, Frederick Spencer.  (Tr. 217).  The

Administrative Law Judge ("ALJ") rendered an unfavorable decision on May 9, 2006.  (Tr. 7-18).

Subsequently, the  Appeals Council denied Plaintiff's request for review.  (Tr. 2-4).  Plaintiff filed

suit in the Western District of Arkansas, seeking judicial review of the ALJ's decision. (Tr. 365-73).

On September 6, 2007, the Honorable Barry A. Bryant remanded the case, pursuant to sentence four

of 42 U.S.C. § 405(g), to conduct further administrative proceedings.  (Tr. 353-61).

A second administrative hearing was conducted on April 17, 2008.  (Tr. 414-465).  Plaintiff

was present and represented by his attorney.  (Tr. 414).  The ALJ issued an unfavorable decision on

August 15, 2008.  (Tr. 337-44).  The Appeals Council denied Plaintiff's request for review on

February 23, 2009, thus making the ALJ's decision the final decision of the Commissioner.  (Tr.

266-68).  Plaintiff now seeks judicial review of that decision.

## II.     Medical History

Plaintiff has a history of chronic back pain, sciatica and gout.  Dr. Sirajabid Khatib treated

Plaintiff for gout between March 9, 2000, and May 1, 2002.  X-rays taken of Plaintiff's left foot on

March 9, 2000, revealed minimal arthritic changes at the first metacarpophalangeal ("MP") joint and

a small posterior calcaneal spur.  (Tr. 188).  No other acute bony abnormalities were noted.  (Tr.

188).  Plaintiff was prescribed Indocin and Allopurinol to alleviate swelling and regulate his uric acid

levels.  (Tr. 185).  X-rays of Plaintiff's right foot, taken on January 18, 2001, revealed a slight

irregularity along the medial margin of the head of the first metatarsal (associated with gouty

arthritis) and slight narrowing of the first MP joint with tiny adjacent spurs.  (Tr. 184).  An x-ray of

Plaintiff's right knee, taken on July 9, 2001, revealed a joint effusion (build-up of fluid), but the

osseous structures were intact and there was no significant joint space narrowing.  (Tr. 183).  In July

and August 2001, Dr. Khatib's notes indicate reduced swelling in Plaintiff's right knee. (Tr. 180-82). A subsequent MRI of Plaintiff's right knee showed evidence of joint effusion and a small infrapatellar bursa effusion. (Tr. 180). A fluid sample taken from Plaintiff's knee on September 10, 2001, revealed abundant acute inflammatory cells. (Tr. 176). Plaintiff received no further medical treatment until 2003.

On November 17, 2003, Plaintiff saw Dr. K. Simon Abraham at the Agency's request. Upon examination, Plaintiff had full range of motion in his cervical spine, lumbar spine, and extremities. (Tr. 156). Straight leg raising was normal on the right side and abnormal on the left. (Tr. 156). Plaintiff had no muscle spasm, weakness, atrophy, or sensory abnormalities. (Tr. 156). He had full limb and joint function, normal gait and coordination, and normal circulation in his legs and feet. (Tr. 156-57). An x-ray of Plaintiff's lumbar spine revealed slight scoliosis of ten degrees and slight narrowing of disc space at L4-L5. (Tr. 158). X-rays of Plaintiff's right knee revealed narrowing of the medial compartment by 20-30%, and were consistent with mild to moderate arthritis. (Tr. 158). Dr. Abraham diagnosed Plaintiff with low back pain with radiculopathy and knee/ankle pain with a history of gout. (Tr. 159). Dr. Abraham described Plaintiff as "well built and strong" and found no limitations in his ability to walk, stand, sit, lift, carry, handle, finger, see, hear, or speak. (Tr. 159). He further noted that Plaintiff had not been treated by a doctor since a back injury sustained in 1992 and was not on any pain medication. (Tr. 159).

At his attorney's request, Plaintiff was evaluated by Dr. Vann Smith, a neuropsychologist, on November 8, 2004. Plaintiff reported a history of low back pain, sleeplessness, and a closed head injury sustained a work. (Tr. 163). He had no prior mental health treatment. (Tr. 163). He reportedly consumed three or four alcoholic beverages and a pack of cigarettes per day. (Tr. 163).

Upon examination, Plaintiff was oriented in all spheres. (Tr. 164). His affect was muted but flexible and his mood was mildly anxious. (Tr. 164). Judgment and insight were intact, although memory was mildly impaired. (Tr. 164). Narratives were marginally fluent but logical and informative. (Tr. 164). Plaintiff voiced no suicidal or homicidal ideation, intent, plan or impulse. (Tr. 164). Dr. Smith estimated Plaintiff's intelligence to lie within the normal range. (Tr. 164).

After conducting a series of neuropsychological tests, Dr. Smith diagnosed Plaintiff with mild to moderate organic brain dysfunction, secondary to chronic pain syndrome, and cognitive dysfunction, non-psychotic, secondary to organic brain syndrome. (Tr. 166). Despite this diagnosis, he gave Plaintiff an estimated Global Assessment of Functioning ("GAF") score of 65.[1] Dr. Smith opined that, in his opinion, Plaintiff's symptoms rendered him completely disabled. (Tr. 166). He completed a mental residual function capacity ("RFC") evaluation consistent with this opinion. (Tr. 166-170).

On November 22, 2005, Plaintiff was sent for a consultative evaluation with Dr. Alice Martinson. Plaintiff reportedly injured his back and right knee in the 1990s, but denied any surgical treatment and was currently taking no medications. (Tr. 189). Upon physical examination, Plaintiff voluntarily limited forward flexion of his spine to no more than 30 degrees, stating that bending further would be too painful. (Tr. 189-90). A seated root test was negative bilaterally and a straight leg raise test was negative on the right. (Tr. 189-90). Deep tendon reflexes were normal and symmetrical in both lower extremities and there was no focal motor weakness or atrophy. (Tr. 189-90). Dr. Martinson noted hypesthesia to light touch on the sole of the left foot. (Tr. 189-90). Range

---

[1] An individual with a GAF score of 61-70 experiences some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning, but is generally functioning pretty well. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 34 (4th ed., 2000).

of motion in Plaintiff's knees was from several degrees of hyperextension to 150 degrees of flexion bilaterally. (Tr. 190). The ligamentous complexes of both knees were stable and there was no effusion, although Dr. Martinson noted mild generalized tenderness about both knees. (Tr. 190).

X-rays of Plaintiff's lumbar spine were normal in all respects. (Tr. 190). Similarly, x-rays of both knees were normal in all respects. (Tr. 190). A uric acid level was obtained due to Plaintiff's complaints of tender knee effusions. (Tr. 190). Results were markedly abnormal, with Plaintiff's uric acid level elevated to 10.15. (Tr. 190). Dr. Martinson determined that Plaintiff had a history and laboratory findings suggestive of gout with gouty synovitis in both knees. (Tr. 190). Regarding Plaintiff's back complaints, she noted some minor clinical findings suggestive of an S1 nerve root irritation on the left side. (Tr. 190). It was her opinion that although an MRI could further elucidate this condition, it was not necessary. (Tr. 190). Using the AMA Guidelines, Fourth Edition, Dr. Martinson gave Plaintiff a total body impairment rating of five percent. (Tr. 190). Furthermore, she reviewed Dr. Smith's report and recommended further psychological evaluation, as Plaintiff's history and presentation, in her opinion, did not warrant a diagnosis of chronic pain syndrome or other intellectual or psychological abnormalities. (Tr. 190).

In an accompanying physical RFC assessment, Dr. Martinson found that Plaintiff could frequently lift/carry 30 pounds and occasionally 40 pounds, stand/walk/sit without limitations, frequently climb and balance, and occasionally stoop, crouch, kneel, and crawl. (Tr. 193-94). Additionally, she found no limitations in Plaintiff's ability to reach, handle, feel, push/pull, see, hear, or speak and no limitations with regard to heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, and humidity. (Tr. 193-94).

Plaintiff was sent for a psychological evaluation with Dr. Nancy Bunting on February 6,

2006.  Plaintiff reported difficulties with concentration, sleep, mood swings, fatigue, and weight gain.  (Tr. 198).  He reportedly spent his time reading science fiction, cleaning, and watching television. (Tr. 199).  He could drive, shop for groceries, and perform all household chores without assistance.  (Tr. 200).  He denied a history of drug/alcohol treatment or counseling, but admitted having two or three mixed drinks per day. (Tr. 198).  When asked about his educational background, Plaintiff stated that he completed the ninth grade and later received "the highest single score in Arkansas on the GED." (Tr. 197).  He also received a mechanics diploma.  (Tr. 197).

On the Wechsler Adult Intelligence Scale, Third Edition, Plaintiff scored in the normal range, with a verbal IQ of 98, a performance IQ of 100, and a full-scale IQ of 99.  (Tr. 196).  He tested at the post-high school level in reading and arithmetic and at the seventh grade level in spelling.  (Tr. 196).  He fell within the borderline range for fine-motor coordination, but was within the average range in every other category.  (Tr. 197).  On the Beck inventories, Plaintiff scored within the severe range of depression and anxiety.  (Tr. 197).  However, his score on the Minnesota Multiphasic Personality Inventory ("MMPI-2") was invalid due to exaggeration of symptoms/malingering.  (Tr. 197).

Plaintiff was alert, attentive, and cooperative and his speech was spontaneous, clear, and coherent.  (Tr. 196).  He demonstrated normal concentration, quick pace, and good persistence.  (Tr. 200).  Dr. Bunting observed that Plaintiff winced and grimaced when climbing stairs and rising from his seat, but also indicated that he was "quite bombastic" and "dramatic about everything." (Tr. 196-97).  Dr. Bunting diagnosed Plaintiff with alcohol abuse and adjustment disorder with depression. (Tr. 199).  She gave Plaintiff an estimated GAF score of 55 and indicated that he was not likely to improve significantly over the next year.  (Tr. 199).

In an accompanying mental RFC assessment, Dr. Bunting indicated that Plaintiff had a fair ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stress, function independently, maintain attention and concentration, understand, remember, and carry out complex job instructions, understand, remember, and carry out detailed, but non-complex job instructions, maintain his personal appearance, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability. (Tr. 201-02). Dr. Bunting stated that these ratings were given due to Plaintiff's alcohol abuse and exaggeration of symptoms on the MMPI-2. (Tr. 201).

Plaintiff went to Twin Lakes Chiropractic from August 17, 2007, through November 25, 2008. (Tr. 270-325). Despite occasional flare-ups, Plaintiff's progress notes indicate slight improvement in his condition. (Tr. 270-325).

Plaintiff occasionally saw Dr. Roger Simons between July 2005 and December 2008 for gout and back, hip and leg pain. Dr. Simon prescribed Allopurinol and Indocin to control Plaintiff's uric acid levels and decrease swelling. (Tr. 328). By January 19, 2007, his gout was "pretty much under controll [sic]." (Tr. 328). On September 28, 2007, Plaintiff was prescribed Neurontin for pain and tingling in his legs. (Tr. 328). On November 13, 2008, Plaintiff was given Vicodin for neck and shoulder pain. (Tr. 327). On December 11, 2008, Plaintiff was still experiencing pain in his hip, ankles, and toes, but Dr. Simons noted better range of motion in the neck. (Tr. 327). There are no medical records beyond this date.

III.   **Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583

(8th Cir. 2003).  "Substantial evidence is less than a preponderance, but enough so that a reasonable

mind might accept it as adequate to support a conclusion."  *Estes v. Barnhart*, 275 F.3d 722, 724 (8th

Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)).  In determining whether

evidence is substantial, the Court considers both evidence that detracts from the Commissioner's

decision as well as evidence that supports it.  *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000)

(citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  If, after conducting this review, "it

is possible to draw two inconsistent positions from the evidence and one of those positions

represents the [Secretary's] findings," then the decision must be affirmed.  *Cox v. Astrue*, 495 F.3d

614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

       To be eligible for disability insurance benefits, a claimant has the burden of establishing that

he is unable to engage in any substantial gainful activity due to a  medically determinable physical

or mental impairment that has lasted, or can be expected to last, for no less than twelve months.

*Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A).  The

Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether

the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe

impairment that significantly limits his physical or mental ability to perform basic work activities;

(3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the

regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the

claimant cannot perform his past work, the burden of production then shifts to the Commissioner

to prove that there are other jobs in the national economy that the claimant can perform given his

age, education, and work experience.  *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a),

416.920(a).  If a claimant fails to meet the criteria at any step in the evaluation, the process ends and

the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

**IV.   Discussion**

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 18, 2002, the alleged onset date. (Tr. 339). At steps two and three, the ALJ found that Plaintiff suffers from a back disorder, osteoarthritis/gout, organic brain dysfunction and cognitive dysfunction, all of which are severe under the Act but do not meet or medically equal a listing. (Tr. 339). At step four, the ALJ determined that Plaintiff is unable to perform his past relevant work as an auto repairman, but retains the RFC to perform certain types of work at the sedentary level. (Tr. 340-41). After hearing testimony from a vocational expert, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, he could perform the requirements of representative occupations such as sedentary and unskilled production worker/touch-up screener, DOT # 726.684-110, of which there are 1500 jobs in the state and 106,000 in the national economy. (Tr. 343). Accordingly, the ALJ determined that Plaintiff was not disabled at any point between January 18, 2002, the alleged onset date, and August 15, 2008, the date of the decision. (Tr. 344).

Plaintiff contends that the ALJ erred by: (1) dismissing his subjective complaints; (2) improperly rejecting the opinion of Dr. Smith; (3) improperly determining his RFC; and (4) failing to fully and fairly develop the record. *See* Pl.'s Br. 11-24.

A.  Subjective Complaints

Plaintiff argues that the ALJ improperly rejected his subjective complaints. *See* Pl.'s Br. 21-22. We disagree. When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of

the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009). When making a credibility determination, the ALJ is "not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations." *Polaski*, 739 F.2d at 1322. However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.*

Contrary to Plaintiff's assertion, the ALJ cited several factors that weigh against his credibility. First, Plaintiff received unemployment benefits during the second and third quarters of 2003. *See Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) (a claimant's acceptance of unemployment benefits, although not dispositive, is facially inconsistent with a claim of disability). Additionally, Plaintiff failed to seek regular treatment or take prescription medication on a continuing basis. "A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications." *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (quoting *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000)). With the exception of consultative examinations, Plaintiff did not receive treatment of any kind from May 1, 2002 until July 14, 2005. Furthermore, during most of the relevant time period, Plaintiff's only medication was over-the-counter ibuprofen. (Tr. 114, 159, 189, 197).

From a mental standpoint, Plaintiff has never before sought mental health treatment for depression and only went to Dr. Smith at his attorney's request. *Page v. Astrue*, 484 F.3d 1040, 1044

(8th Cir. 2007) (claimant's failure to seek mental health treatment was indicative of the relative seriousness of her depression). Moreover, Plaintiff's exaggeration of symptoms/malingering on the MMPI-2 suggests that his mental impairments are not as severe as previously alleged. *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006) (exaggeration of symptoms cast doubt on claimant's motivations and credibility).

In this instance, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and gave compelling reasons for discounting Plaintiff's subjective complaints. *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) ("We will defer to an ALJ's credibility finding as long as the 'ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so.'"). As such, we find no error in the ALJ's credibility determination.

B. Bias

Plaintiff asserts that the ALJ demonstrated bias in weighing and dismissing Dr. Smith's opinion. *See* Pl.'s Br. 19-23. We disagree.

The ALJ gave specific reasons for the weight given to Dr. Smith's opinion. First, Dr. Smith was a one-time, consultative examiner. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (the assessment of a doctor who evaluates a claimant once or not at all does not usually constitute substantial evidence). Plaintiff had never before sought mental health treatment and did so only at the request of his attorney. *See Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995) (encounters with doctors linked primarily to quest to obtain benefits rather than to obtain medical treatment). Moreover, Dr. Smith's findings were internally inconsistent and at odds with the medical evidence as a whole. (Tr. 342). He diagnosed Plaintiff with organic brain syndrome and cognitive

dysfunction, and completed a disabling mental RFC assessment.[2] (Tr. 166-70).  However, Dr. Smith

rated Plaintiff's impairments within the mild to moderate severity range.  (Tr. 166).  Additionally,

Plaintiff scored within the normal range of intelligence, exhibited only mild memory impairment,

and had an estimated GAF score of 65.  (Tr. 164-66).  These findings are simply inconsistent with

Dr. Smith's highly restrictive mental RFC assessment.  As such, the ALJ properly evaluated and

discredited his opinion.

C. RFC

Plaintiff contends that the ALJ failed to take into account all of his physical and mental

limitations when determining his RFC.  *See* Pl.'s Br. 11-13.  A disability claimant has the burden

of establishing his RFC.  *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737

(8th Cir. 2004).  A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. §

404.1545(a)(1).  The ALJ determines a claimant's RFC based on "all relevant evidence, including

medical records, observations of treating physicians and others, and the claimant's own descriptions

of his or her limitations."  *Masterson*, 363 F.3d at 737.  The Eighth Circuit has stated that "a

claimant's residual functional capacity is a medical question."  *Lauer v. Apfel*, 245 F.3d 700, 704

(8th Cir. 2001).  Thus, although the ALJ bears the primary responsibility for determining a

claimant's RFC, there must be "some medical evidence" to support the ALJ's determination.

*Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

The ALJ found that Plaintiff has the RFC to perform sedentary work, as defined in 20 C.F.R.

§ 404.1567(a), except that he is limited to lifting and/or carrying less than 10 pounds frequently and

---

[2] To date, we are unaware of an instance where Dr. Smith evaluated a claimant and did not find him or her completely disabled due to organic brain syndrome or cognitive dysfunction.

no more than 10 pounds occasionally, standing and/or walking no more than 2 hours in an 8-hour workday, and sitting no more than 6 hours in an 8-hour workday.  (Tr. 340-41).  The ALJ further found that due to pain/side effects of medications, Plaintiff cannot climb scaffolds/ladders/ropes, but can occasionally climb ramps and stairs, stoop, bend, crouch, kneel, balance or crawl.  (Tr. 340-41).  Plaintiff is precluded from performing work where driving is required and cannot work around unprotected heights/dangerous equipment.  (Tr. 340-41).

Substantial evidence supports the ALJ's RFC assessment.  Physically, Plaintiff claims he is disabled as a result of back pain with radiculopathy and joint pain/swelling associated with gout. The medical evidence of record does not substantiate this claim.  X-rays of Plaintiff's lumbar spine, taken on November 17, 2003, revealed slight narrowing at the L4-L5 levels.  (Tr. 158).  X-rays taken on November 22, 2005, showed Plaintiff's lumbar spine to be normal in all respects.  (Tr. 190).  Dr. Martinson saw minimal evidence to suggest an S1 nerve root irritation, but did not believe an MRI study was required.  (Tr. 190).  She gave Plaintiff an impairment rating of five percent based on "minor clinical abnormalities." (Tr. 190).  From August 17, 2007 until November 25, 2008, Plaintiff went to Dr. Ungerank, a chiropractor.  Despite several flare-ups, Dr. Ungerank's records show slight improvement in Plaintiff's back, hip, and leg pain.  (Tr. 270-325).  Plaintiff saw Dr. Simons on September 28, 2007, for mid-back, hip and leg pain.  (Tr. 328).  He prescribed Neurontin, which Plaintiff found helpful.  (Tr. 441).  Plaintiff was treated for gout by Dr. Khatib in 2001 and by Dr. Simons in 2005, 2006, and 2007.  (Tr. 176-88, 327-32).  Both physicians prescribed Allpurinol and Indocin, which Plaintiff has not taken on a consistent basis.  (Tr. 173, 327-31).  On January 19, 2007, Dr. Simons noted that Plaintiff's "gout was pretty much under controll [sic]." (Tr. 331).

The objective medical evidence shows that, when taken consistently, medication has been

largely effective in controlling Plaintiff's uric acid levels and reducing the frequency and severity of his flare-ups. (Tr. 331). Furthermore, the overwhelming evidence shows only minimal impairment resulting from Plaintiff's back, hip, and leg pain. Plaintiff's medical history, combined with the infrequency of treatment and prescription medication, convinces us that his condition is not so severe as to preclude all types of work. Accordingly, we find that the ALJ's RFC assessment properly reflects Plaintiff's physical limitations.

Similarly, the ALJ's RFC assessment is fully compatible with Plaintiff's mental limitations. Upon evaluating Plaintiff, Dr. Bunting diagnosed him with alcohol abuse and adjustment disorder with depression. (Tr. 199). She gave Plaintiff an estimated GAF score of 55, indicating moderate symptoms or limitations in social, occupational, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 34 (4th ed., 2000). Plaintiff scored within the severe range of depression and anxiety on the Beck inventories. (Tr. 197). However, his score on the MMPI-2 was invalid due to symptom exaggeration. (Tr. 197). Dr. Bunting completed a mental RFC assessment, in which she found that Plaintiff has a fair ability to make occupational, performance, and social adjustments and a good ability to understand, remember and carry out simple job instructions. (Tr. 201-02).

The ALJ determined that Plaintiff has the mental RFC to perform simple, routine work that is learned and performed by rote with few variables and where supervision is direct, concrete, and task-specific and contact with the public/co-workers is incidental only. (Tr. 340-41). This assessment adequately reflects Plaintiff's mental limitations. For reasons already discussed, the ALJ properly dismissed Dr. Smith's contradictory opinion. Furthermore, Plaintiff's lack of mental health treatment and exaggeration of symptoms weigh against his credibility. After considering the record

as a whole, we find that substantial evidence supports the ALJ's RFC assessment.

     D.  <u>Duty to Fully and Fairly Develop the Record</u>

In his final argument, Plaintiff contends that the ALJ failed to fully and fairly develop the record concerning his mental impairments.  *See* Pl.'s Br. 17-18, 20-21.  We disagree.

The ALJ has a duty to fully and fairly develop the record, even if a claimant is represented by counsel. *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998).  "It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician. *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000).  While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)).  There is no bright-line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case by case basis.  *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

Plaintiff argues that the ALJ was obligated to re-contact Dr. Smith for further clarification before dismissing his opinion.  *See* Pl.'s Br. 17-18.  He cites *O'Donnell v. Barnhart*, 318 F.3d 811 (8th Cir. 2003), in support of this proposition.  However, unlike Plaintiff, the claimant in *O'Donnell* had an extensive treatment record and was taking powerful pain medications.  *Id.* at 814.  Furthermore, the claimant's treating physician had a five-year relationship with the patient that included over fifty office visits.  *Id.*  The Eighth Circuit determined that, given the "extensive treatment history" in the case, the ALJ was obligated to re-contact the treating physician.  *Id.* at 819.

-15-

Here, Dr. Smith was a one-time consultative examiner, not a treating physician. Moreover, Plaintiff has no history of mental health treatment. The ALJ had two mental evaluations, one from Dr. Smith and one from Dr. Bunting, on which to base his RFC assessment. In this instance, there was substantial evidence in the record to allow the ALJ to make a fully informed decision. *Haley v. Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001). As such, the ALJ's decision is affirmed.

## V.      Conclusion

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

ENTERED this 26th day of May 2010.


*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE